**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | **CRIMINAL NO. 4:15-cr-00015** |
| | § | |
| **v.** | § | |
| | § | |
| **RICHARD ARTHUR EVANS** | § | |

**UNITED STATES MOTION FOR PRELIMINARY ORDER OF FORFEITURE**

The United States of America respectfully moves for a Preliminary Order of Forfeiture imposing a personal money judgment against Defendant Richard Arthur Evans in the amount of $2,401,761.41 and forfeiting certain money orders and cash that were seized from Evans' pain management office.[1] The United States represents:

**PROCEDURAL BACKGROUND**

Following trial in July 2016, a jury found Evans guilty of conspiracy to distribute narcotics and to commit mail fraud, five counts of distribution of narcotics, eight counts of mail fraud, and five money laundering counts involving the proceeds from the distribution of Schedule II controlled substances. At trial, the Government established that Evans issued prescriptions for Schedule II narcotics, primarily for oxycodone and sometimes a combination of oxycodone and other drugs known as the "Houston cocktail," outside the course of professional practice and not for a legitimate medical purpose. Among other things, the trial evidence showed that Evans issued prescriptions for large quantities of dosage units of oxycodone and other Schedule II narcotics with minimal or no medical examination, that most of the Schedule II prescriptions were issued to

[1] Defendant filed a request for forfeiture hearing (Doc. 263); the hearing has been scheduled for December 13, 2016 (Doc. 267).

Louisiana residents,[2] that Evans issued Schedule II prescriptions upon receipt of payment, and that Evans issued Schedule II prescriptions to "patients" who sent Evans money orders for approximately $240 each. Further, the trial evidence showed that during the conspiracy, Evans received approximately $2,401,761.41 in exchange for prescriptions for Schedule II controlled substances and most of that money was paid by cash and money orders.

The United States provided notice to Evans in the Indictment that in the event of conviction, property would be subject to forfeiture, including but not limited to, approximately $8,064.42 in United States currency and numerous money orders. Dkt. No. 114, pp. 16 – 21. The notice also stated that a money judgment could be imposed. Prior to the jury's deliberations regarding the criminal charges, Evans informed the Court that he did not elect to retain the jury to determine the forfeiture of specific property. In light of Defendant's conviction, the United States now seeks the imposition of a money judgment in the amount of $2,401,761.41 and the forfeiture of certain money orders and cash seized from his office in September 2012 that constitute proceeds of the conspiracy.

## LAW AND ARGUMENT

### I. Standard of Law Governing Criminal Forfeiture

Rule 32.2(b)(1)(A) of the Federal Rules of Criminal Procedure provides that after a guilty verdict on any count in an indictment for which criminal forfeiture is sought, the Court must determine what property is subject to forfeiture. For specific property, the Court must determine whether the government has established the requisite nexus between the property and the offense, and for a money judgment, the Court must determine the amount of money that the defendant will

[2] Government Trial Exhibit 168 shows that out of the 956 patients who received prescriptions for Schedule II controlled substances from Evans, 805 were Louisiana residents.

be ordered to pay. Fed. R. Crim. P. 32.2(b)(1)(A). "Unless doing so is impractical, the court must enter the preliminary order sufficiently in advance of sentencing to allow the parties to suggest revisions or modifications before the order becomes final as to the defendant under Rule 32.2(b)(4)." Fed. R. Crim. P. 32.2(b)(2)(B).

The standard for forfeiture determinations is by a preponderance of the evidence. *United States v. Gasanova*, 332 F.3d 297, 300-01 (5th Cir. 2003). The Court's determination "may be based on evidence already in the record . . . and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." Fed. R. Crim. P. 32.2(b)(1)(B). Because forfeiture is a part of the sentencing process, the Federal Rules of Evidence do not apply, and hearsay is admissible. *See United States v. Capoccia*, 503 F.3d 103, 109-110 (2d Cir. 2007) (Fed. R. Crim. P. 32.2(b)(1) allows the court to consider "evidence or information," making it clear that the court may consider hearsay); *United States v. Creighton*, 52 F. App'x 31, 35-36 (9th Cir. 2002) (hearsay is admissible at sentencing and therefore may be considered in forfeiture proceedings); *United States v. Ivanchukov*, 405 F. Supp. 2d 708, 709 n.1 (E.D. Va. 2005)(acknowledging that the court may consider hearsay because "the traditional rules of evidence do not apply in determining issues related to criminal forfeiture."); *United States v. Gaskin*, 2002 WL 459005, at *9 (W.D.N.Y. Jan. 8, 2002); *see also United States v. Solis*, 299 F.3d 420, 455 (5th Cir. 2002) (citation omitted)(stating that at sentencing, "the district court may consider any information which bears 'sufficient indicia of reliability to support its probable accuracy,' including hearsay evidence, without regard to admissibility under the Federal Rules of Evidence which govern at trial").

## II. Money Judgment

As a result of Evans' conviction for mail fraud and conspiracy to distribute controlled substances and to commit mail fraud, forfeiture is now mandatory. *See* 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). Federal law requires the forfeiture of all property that constitutes or is derived from proceeds traceable to specified unlawful activity and a conspiracy to commit such offenses. 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). Both mail fraud and the felonious sale or dealing of controlled substances constitute a "specified unlawful activity" under 18 U.S.C. § 1956(c)(7)(A), which incorporates 18 U.S.C. § 1961(1)(D).

Fed. R. Crim. P. 32.2(b) expressly authorizes the imposition of forfeiture money judgments. *See* Fed. R. Crim. P. 32.2(a), 32.2(b)(1)(A), 32.2(b)(2)(A), 32.2(b)(2)(C), and 32.2(c)(1). Further, the Fifth Circuit has held that, in criminal forfeiture, a money judgment representing the proceeds of the offense is appropriate. *See United States v. Nagin*, 810 F.3d 348, 353 (5th Cir. 2016)("The amount of a personal money judgment is measured by the proceeds of the defendant's illegal activity, rather than the amount of assets he retains at the time of sentencing."); *United States v. Olguin*, 643 F.3d 384, 397 (5th Cir. 2011)("We join our sister circuits and hold that money judgments are appropriate in the criminal forfeiture context." (quoting *United States v. Day*, 524 F.3d 1361, 1378 (D.C. Cir. 2008))).

In a conspiracy case, a money judgment may represent the full amount of the proceeds of the conspiracy and need not be limited to the amount actually received by that particular defendant. *See Nagin*, 810 F.3d at 353 ("As a general matter, co-conspirators subject to criminal forfeiture are held jointly and severally liable for the full amount of proceeds of the conspiracy."); *Olguin*, 643 F.3d at 398-99 (rejecting defendant's argument that he should not be liable for amounts received by co-conspirators); *United States v. Hernandez*, 470 F. App'x 333, 335 (5th Cir.

2012)(citing *Olguin*, 643 F.3d at 399)); *United States v. Edwards*, 303 F.3d 606, 643 (5th Cir. 2002) (affirming a money judgment that held defendant jointly and severally liable for proceeds of a racketeering conspiracy, including an amount extorted by his co-conspirator); *United States v. Elder*, 682 F.3d 1065, 1073 (8th Cir. 2012).  Likewise, for a mail fraud scheme, proceeds are not limited to the particular mailings or money orders listed in the Indictment. Rather, all of the proceeds of the whole scheme are subject to forfeiture. *United States v. Venturella*, 585 F.3d 1013, 1015 (7th Cir. 2009) (stating that "the forfeiture is not limited to the amount of the particular mailing but extends to the entire scheme"); *United States v. Pena*, 380 F. App'x 623, 626 (9th Cir. 2010); *see also United States v. Jennings*, 487 F.3d 564, 584 (8th Cir. 2007).

Evans was convicted of a conspiracy and mail fraud scheme that generated millions of dollars in proceeds. The trial evidence, specifically Government Trial Exhibit 170 and the testimony of IRS Special Agent Terry McGee, established that during the course of the conspiracy, Schedule II "patients" paid Evans approximately $2,401,761.41 for the issuance of prescriptions for Schedule II controlled substances.  That amount does not even take into account the money that Evans' "patients" also paid for the actual pills that were then dispensed as part of the conspiracy—DEA Diversion Investigator Michael Mills testified at trial that based upon prescriptions issued by Evans, Briargrove Pharmacy dispensed approximately 1.6 million oxycodone dosage units from January 2011 through September 2012.  *See also* Government Trial Exhibit 160.  Therefore, at a minimum, the Court should impose a money judgment in the amount of $2,401,761.41.

## III. Seized Cash and Money Orders

The United States also moves for a preliminary order of forfeiture of $8,064.42 in United States currency and thirty-eight money orders, which are identified in Exhibit A-1[3] to this Motion (Exhibit A-1 is attached to Exhibit A; both exhibits are filed under seal).[4] The evidence establishes that the cash and the money orders constitute proceeds of the conspiracy and the mail fraud scheme, and that they are, therefore, subject to forfeiture to the United States under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461.

Law enforcement seized the $8,064 in cash and the money orders from Evans' pain management office during the execution of the search warrant on or about September 13, 2012. The evidence at trial established that Evans routinely received cash and money orders in exchange for prescriptions for Schedule II controlled substances that were issued without a legitimate medical purpose and outside the course of professional practice as a part of the conspiracy. Further, as set forth in the Declaration of IRS Special Agent Terry McGee (submitted as Exhibit A to this Motion), Evans generally required Schedule II "patients" to make in-person office visits once every 90 days, at which time they typically paid Evans in cash to obtain prescriptions for Schedule II controlled substances. In the intervening time between in-person visits (typically 30 and then 60 days after the visit), Evans and/or his staff issued prescriptions for Schedule II controlled substances upon receipt of approximately $240, which Schedule II "patients" (mostly residents of Louisiana or other states) sent to his office by mail or commercial carrier and typically in the form of money orders. Exhibit A.

---

3 National Express Money Order No. 1000006550, which was originally issued in the amount of $240.00, has been replaced by a check dated May 17, 2013 and made payable to the US Marshals Service in the amount of $216.00.

4 These exhibits are being filed under seal in a separate docket entry because they contain personal identifying information for the individual remitters.

In the two days preceding the execution of the search warrant, Evans received approximately $13,360 in cash in exchange for Schedule II prescriptions ($7,240 on September 11, 2012 and $6,120 on September 12, 2012). Exhibit A. All of the prescriptions written in exchange for this cash included oxycodone, and several included the combination of drugs known as the "Houston cocktail." Exhibit A. Most of the individuals who paid cash for these prescriptions were Louisiana residents, and each person paid amounts of cash that are consistent with the amounts that Evans charged for Schedule II prescriptions issued as part of the conspiracy (between $200 to $300; most paid $240). Exhibit A.

With respect to the seized money orders: (1) all are made payable to Evans (Exhibit A-1); (2) the amounts are consistent with the amounts generally charged by Evans for Schedule II prescriptions (thirty-two of the thirty-eight money orders are for $240, one is for $250, and five are for $200) (Exhibit A and A-1); (3) every "patient" who sent the seized money orders to Evans obtained (either that same month and/or in recent month(s) prior to the date of the seized money order) prescriptions for Schedule II controlled substances (all except for two received oxycodone and multiple "patients" received the combination of drugs known as the "Houston cocktail") (Exhibit A); (4) all of the individuals identified as remitters on the money orders were out-of-state residents (Exhibit A); and (5) all but three of the remitters were Louisiana residents, which is consistent with the trial evidence that most of the people improperly receiving Schedule II prescriptions as part of the conspiracy were Louisiana residents (Exhibit A).

The trial evidence and the additional evidence submitted with this Motion establish by a preponderance of the evidence that the $8,064.42 in cash and the thirty-eight money orders constitute proceeds of the conspiracy and mail fraud scheme for which Evans was convicted.[5]

---

[5] Upon entry of a final order of forfeiture (following the resolution of any third-party petitions), the total amount of cash and money orders that are forfeited to the United States as proceeds will be credited against any money

## CONCLUSION

For the foregoing reasons, the United States respectfully requests a preliminary order of forfeiture imposing a money judgment against Defendant, Richard Arthur Evans, in the amount of $2,401,761.41 and preliminarily forfeiting the $8,064.42 and money orders that were seized in September 2012.

Respectfully submitted,

KENNETH MAGIDSON
UNITED STATES ATTORNEY

By: s/ Lori S. Roth
Lori S. Roth
Assistant United States Attorney
United States Attorney's Office
1000 Louisiana, Suite 2300
Houston, Texas 77002
(713) 567- 9547

## CERTIFICATE OF CONFERENCE

Charley Davidson, counsel for Defendant, indicated that Defendant is opposed to the requested money judgment and forfeiture of the seized cash and money orders.

s/ Lori S. Roth
Lori S. Roth
Assistant United States Attorney

judgment imposed against Defendant.

**CERTIFICATE OF SERVICE**

A true and correct copy of the foregoing motion was served on counsel of record via the Court's electronic filing system on September 26, 2016. A true and correct copy of the sealed exhibits were served on Richard Evans' attorney, Charley Davidson, via email on September 26, 2016.

s/ Lori S. Roth
Lori S. Roth
Assistant United States Attorney