UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | NO. H-15-CR-15-2 |
| | § | |
| RICHARD ARTHUR EVANS | § | |

### RICHARD EVANS'S EMERGENCY MOTION FOR REDUCTION IN SENTENCE PURSUANT TO 18 U.S.C. § 3582(C)(1)(A), AS AMENDED BY THE FIRST STEP ACT OF 2018

An inmate in prison is not "entitled" to a doctor of his choosing. He cannot schedule timely appointments, or pain medicine, or surgery for life-threatening cancer. And, before this year, he had no opportunity to ask the Court for help or "compassion" with his condition.

But in December 2018, Congress changed the law of "compassionate release"– allowing *inmates*, and not just BOP, to petition the courts for release when they face life-threatening illness. The authors of the law determined that BOP had done an inadequate job of treating such inmates, and that sentencing courts should have discretion to consider their plight. As set out below, defendant Richard Evans ("Dr. Evans") is suffering from a fast growing, malignant melanoma in his neck and lymph nodes – and moves for a reduction of his sentence to time served, or to probation with or without a condition of home confinement, pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b)(1) of the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018). The Court may order "compassionate release" for "efficient" medical treatment – even if BOP could and did offer good care. But in Dr. Evans's case, BOP has delayed treatment, allowing the cancer to spread untreated for months. If it is not already too late, time is of the essence.

**I.     Procedural History.**

As this Court will remember, Dr. Evans was convicted at a jury trial of prescribing opioids without medical necessity. He was sentenced to 60 months' imprisonment, followed by three years of supervised release. (Doc. 340) His convictions and sentence were affirmed by the United States Court of Appeals for the Fifth Circuit. (Docs. 421, 422)

Dr. Evans reported to the Federal Bureau of Prisons ("BOP") for service of his sentence on April 11, 2017 at FCI Oakdale II, in Oakdale, Louisiana. He has served nearly 23 months, with a projected release date of August 17, 2021.[1] He is 74 years old.

**II.    The Mass on Dr. Evans's Neck.**

Ironically, Dr. Evans was trained in cancer medicine (and practiced in that field before turning to pain management). Last summer, he noticed a mass on the right side of his neck. (A detailed chronology of these events is attached to this motion as Appendix 1.) When it continued to grow, he sought BOP medical attention on October 15, 2018. It took until December 19, 2018 (two months) for a general surgeon to evaluate Dr. Evans. The general surgeon recommended *immediate* excision and biopsy of the neck mass, on the ground that it might be cancerous; however, it was not until January 14, 2019, that Dr. Evans was taken for a biopsy.

On January 17, 2019, the BOP received a pathology report diagnosing a malignant melanoma. BOP did not provide these results to Evans until February. And the BOP did not take Dr. Evans for follow-up to an outside oncologist until January 30, 2019, nearly two weeks after the pathology results. At that time, oncologist Paul X. Zhang, M.D. confirmed the diagnosis and

---

[1] Information obtained via the Inmate Locator feature of the BOP website, www.bop.gov (visited Feb. 19, 2019). The listed projected release date does not take into account the increase in "good time" – from the BOP's current 47 days a year, to 54 days a year – mandated by the First Step Act. By counsel's reckoning, this would advance Dr. Evans's projected release date to July 13, 2021.

recommended that Dr. Evans receive a PET scan and then immunotherapy and/or surgery at an outside facility (M.D. Anderson, Ochsner, or LSU).  Despite the fact that the PET scan confirmed the diagnosis of malignant melanoma, however, Dr. Evans has, to date, not received either the immunotherapy or the surgery recommended by Dr. Zhang.

On January 31, 2019, Dr. Evans requested BOP to move, under 18 U.S.C. § 3582(c)(1)(A), for a reduction of his sentence to time served or, in the alternative, home confinement.  (Appendix 2) The warden of FCI Oakdale II received that request on January 31, 2019.  More than 30 days have passed since the warden's receipt of that request, but no final decision has been rendered by the BOP.  Pursuant to the First Step Act, Dr. Evans now moves this Court directly for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A).

**III.   Applicable Law.**

For many years, 18 U.S.C. § 3582(c)(1)(A) has allowed district courts to reduce federal prisoners' sentences for "extraordinary and compelling reasons" – often referred to as "compassionate release" ("CR") – but, until December 21, 2018, such a reduction in sentence was permitted only upon motion of the Director of the BOP.  The BOP has, however, never been generous with CR motions.  Quite the opposite:  the BOP's stinting use of CR has been the subject of repeated criticism.[2]  In fact, the Department of Justice's own Inspector General found, in 2013, that "the existing BOP compassionate release program is poorly managed and that its inconsistent

---

[2] *See, e.g.*, Bryant S. Green, Comment, *As the Pendulum Swings:  The Reformation of Compassionate Release to Accommodate Changing Perceptions of Corrections*, 46 U. Tol. L. Rev. 123, 136-39 (2014); Casey N. Ferri, *A Stuck Safety Valve:  The Inadequacy of Compassionate Release for Elderly Inmates*, 43 Stetson L. Rev. 197, 219-25 (2013); Human Rights Watch & Families Against Mandatory Minimums, *The Answer Is No:  Too Little Compassionate Release in US Federal Prisons* (2012), available at the following URL:
https://www.hrw.org/report/2012/11/30/answer-no-too-little-compassionate-release-us-federal-prisons (visited Feb. 19, 2019).

and ad hoc implementation has likely resulted in potentially eligible inmates not being considered for release[, and] . . . terminally ill inmates dying before their requests for compassionate release were decided." U.S. Dep't of Justice, Office of the Inspector General, Evaluation and Inspections Division, *The Federal Bureau of Prisons' Compassionate Release Program* (April 2013),[3] at 53.

It was dissatisfaction with the BOP's crabbed interpretation and administration of its CR program that led to the reforms contained in the First Step Act.  *See, e.g.,* Erica Zunkel, *18 U.S.C. § 3553(a)'s Undervalued Sentencing Command:  Providing a Federal Criminal Defendant with Rehabilitation, Training, and Treatment in "the Most Effective Manner,"* 9 Notre Dame Journal of International Law 49, 61 (2019) ("The First Step Act aims to increase 'the use and transparency of compassionate release' by broadening eligibility and removing sole discretion for determining who is eligible for compassionate release from the BOP.") (footnote omitted).  For present purposes, the most important reform is that the BOP no longer retains its monopoly on § 3582(c)(1)(A) release motions; rather, federal prisoners for whom the BOP has refused to file such a motion may now file their ***own*** § 3582(c)(1)(A) motions with the original sentencing court.

Particularly, § 3582(c)(1)(A) now provides in relevant part as follows:

(c)   Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that –

    (1)   in any case –

        (A)   the court, upon motion of the Director of the Bureau of Prisons, ***or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,*** may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of

---

[3] Available at the following URL:  https://oig.justice.gov/reports/2013/e1306.pdf (visited Feb. 19, 2019).

4

> imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that –
>
>> (i) extraordinary and compelling reasons warrant such a reduction;
>
>> . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b)(1) of the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018) (changes made by the First Step Act are indicated by the bolded and italicized text).

The Sentencing Commission policy statement on reductions of sentence under 18 U.S.C. § 3582(c)(1)(A) – USSG § 1B1.13 (p.s.) – lists three specific categories of "extraordinary and compelling reasons" but makes clear that there is no restrictive list of what combination of factors can warrant release. USSG § 1B1.13 (p.s.), comment. (n.1(A)-(D)).[4]

**IV. Dr. Evans Presents "Extraordinary and Compelling Reasons" Warranting a Reduction in Sentence Under 18 U.S.C. § 3582(c)(1)(A).**

**1. Dr. Evans's "Extraordinary and Compelling Reasons."**

There are "extraordinary and compelling reasons" warranting a reduction of Dr. Evans's sentence to time served, or, alternatively, probation with or without home confinement. Particularly, Dr. Evans now has a confirmed diagnosis of malignant melanoma. "While melanoma accounts for only 3% of all types of the skin cancer, it has the highest death rate of all types and is

---

[4] The three specific categories are: (1) terminal illness of the inmate, or a irrecoverable serious physical, medical, or mental issue that prevents the inmate from providing himself with self-care within the prison; (2) age of the defendant, combined with a serious deterioration in physical or mental health because of the aging process; and (3) death or incapacitation of the caregiver of the inmate's minor children, or incapacitation of the inmate's spouse or partner. *See* USSG § 1B1.13 (p.s.), comment. (n.1(A)-(C)). A "terminal illness" means "a serious and advanced illness with an end of life trajectory." USSG § 1B1.13 (p.s.), comment. (n.1(A)). Notably, "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is *not* required," and examples of terminal illness include "metastatic solid-tumor cancer." *Id*.

5

more likely to spread (metastasize) in the body." The University of Texas MD Anderson Cancer Center, "Melanoma," available at https://www.mdanderson.org/cancer-types/melanoma.html (visited Feb. 21, 2019). Prompt diagnosis and treatment of malignant melanoma are key to the patient's survival. His cancer has already spread to his lymph nodes. Other organs such as the brain are next.

As indicated in the attached letter (*see* Appendix 2) from Chris Hagerman, the Director of Patient Affairs at MD Anderson here in Houston, Dr. Evans has the opportunity to be treated at MD Anderson. MD Anderson is one of the premier cancer treatment centers in the world, with cutting-edge treatment for malignant melanoma. "Because MD Anderson leads one of the most active melanoma treatment programs in the nation, [its] surgeons have extraordinary expertise and experience that can help increase [a patient's] chances for successful treatment." The University of Texas MD Anderson Cancer Center, "Melanoma," available at https://www.mdanderson.org/cancer-types/melanoma.html (visited Feb. 21, 2019). "Several innovative treatments for melanoma are offered at MD Anderson, and many of them were discovered [t]here. [A patient's] personalized treatment may include:

- Lymphatic mapping and sentinel node biopsy
- Minimally invasive isolated limb perfusion, which delivers cancer drugs directly to the arm or leg if melanoma has spread
- Adjuvant radiation therapy to help reduce the risk of melanoma coming back after surgery."

*Id.* Moreover, MD Anderson is "constantly researching ways to help the body fight the cancer," including immunotherapy, and it "offer[s] a broad array of clinical trials for melanoma skin cancer." *Id.*

6

As detailed in the opinion (Appendix 3) of Dr. Albert Maillard, a distinguished surgical oncologist who has reviewed Dr. Evans's BOP medical records, Dr. Evans is suffering from a very serious metastatic cancer staged between levels 3b and 4.  As Dr. Maillard explains, such "[m]alignant melanoma is very aggressive with a poor prognosis overall."  *Id*.  The survival rate, however, can be improved with "timely targeted radiation therapy, chemotherapy, checkpoint inhibitors, monoclonal antibody therapy, targeted immunotherapy, and newer investigational therapies."  *Id*.  Facilities that provide this type of care are only a few "dedicated cancer centers" such as Dana-Farber, Memorial Sloan-Kettering, and MD Anderson Cancer Center.  *Id*.  In Dr. Maillard's expert opinion, it is "critical" that Dr. Evans receive intensive treatment as soon as possible.  *Id*.

Dr. Evans's diagnosis of malignant melanoma, with its need for prompt treatment, combined with the opportunity to receive treatment at MD Anderson, present "extraordinary and compelling reasons" for reduction of his sentence under 18 U.S.C. § 3582(c)(1)(A).  And, as set out below, such a reduction of sentence is consistent with, and indeed supported by, the 18 U.S.C. § 3553(a) factors whose consideration is mandated by § 3582(c)(1)(A) "to the extent they are applicable."

### 2. The 18 U.S.C. § 3553(a) Factors As Applied to Dr. Evans.

Of course this Court properly considered the § 3553(a) factors at the time of Dr. Evans's original sentencing.  But two of those factors have now changed and carry much more weight than at the time of sentencing, namely:  (1) "the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), and (2) "the need for the sentence imposed . . . to provide the defendant with . . . medical care . . . in the most effective manner," 18 U.S.C. § 3553(a)(2)(D).  Particularly, Dr. Evans's "history and characteristics" now include his diagnosis of malignant melanoma, and the

7

Court must now consider the need "to provide [Dr. Evans] with . . . medical care [for that condition] . . . in the most effective manner."  18 U.S.C. § 3553(a)(2)(D).

The BOP will claim that it is capable of providing adequate medical care and treatment for Dr. Evans's cancer.  Such a claim should be viewed charily, given the delays since October that have allowed the cancer to grow and spread, and since commentators have found problems with the BOP's provision of medical care.[5]

We attach a declaration (Appendix 4) from Phillip Wise, former Assistant Director of the BOP with responsibility for its Health Services Division.  According to Mr. Wise, Dr. Evans and BOP will face these challenges, among others:

- Dr. Evans "will likely be transferred to another federal prison and will not be housed in a camp setting;"
- The "scope of care and his access to medical specialists is more limited in custody than in the community;" and
- Dr. Evans "is unlikely to be approved for participation in any clinical trials that may be available."

Importantly, though, relief is warranted even without finding that BOP lacks competent care.  Dr. Evans is in "extraordinary" straits under § 3553(a)(2)(D) – and his cancer will be treated "*in the most effective manner*" at a hospital like MD Andersen. 18 U.S.C. § 3553(a)(2)(D).[6]

---

[5] *See, e.g.*, Zunkel, *supra*, 9 Notre Dame Journal of International Law, at 57 ("It has become clear that the BOP not equipped to provide inmates with some of the most basic treatment and rehabilitative services, including effective medical care and mental health care.") & 59 ("The BOP faces numerous challenges in providing adequate, let alone effective, medical care to inmates.") (footnote omitted); Natalie Hinton, Comment, *Curing the BOP Plague with* Booker*: Addressing Inadequate Treatment in the Bureau of Prisons*, 41 J. Marshall L. Rev. 219, 231 (2007) ("The BOP cannot claim to meet the medical needs of its inmates when it has been overpopulated and understaffed for years.").

[6] A good example of the difference between the two concepts is found in *United States v. Wadena*, 470 F.3d 735 (8th Cir. 2006).  In *Wadena*, the district court varied downward from the Guidelines of 18 to 24 months,

Because "the evidence shows that the care within the BOP falls woefully below that standard," Zunkel, *supra*, 9 Notre Dame Journal of International Law, at 57, and because MD Anderson has perhaps the world's best program for treatment of malignant melanoma, § 3553(a)(2)(D) strongly militates in favor of reducing Dr. Evans's sentence.

And § 3553(a)(2)(D) is not implicated solely by MD Anderson's superior medical technology and expertise. BOP suffers from general and medical staffing shortages, delays in treatment, and problems in recruiting medical personnel. *See* Zunkel, *supra*, 9 Notre Dame Journal of International Law, at 59;  *see also* U.S. Dep't of Justice, Office of the Inspector General, Evaluation and Inspections Division, *The Impact of an Aging Inmate Population on the Federal Bureau of Prisons* (May 2015, rev. Feb. 2016),[7] at ii, 16, 18; *see also* Ferri, *supra* note 2, 43 Stetson L. Rev., at 208 ("There is often not enough staff to man an overcrowded prison and accompany inmates to medical appointments in the community.") (footnote omitted). Indeed, the chronology of events in this case (Appendix 1) reflects delays in outside medical consultations and treatment that may well be attributable to these factors. *See* Appendix 4 (Decl. of Phillip Wise) (While BOP "will attempt to provide all medically necessary for Dr. Evans," there is "little question that treatment in the community is more efficient, less burdensome, and more likely to be timely

---

down to a sentence of five years' probation, based in part on the defendant's need for dialysis treatments and other medical care. The government objected, "arguing that there was no showing that Wadena could not obtain dialysis treatments and other necessary medical care in prison." *Id.* at 739. "This argument," said the Eighth Circuit, "misse[d] the mark." *Id.* Pointing out that "[18 U.S.C.] § 3553(a)(2)(D) explicitly states that the effective provision of necessary medical care is an appropriate factor for the district court's consideration in sentencing," *id.*, the Eighth Circuit held that "[t]he district court had the discretion to decide that it would be more efficient and effective for Wadena to receive treatment from his current healthcare provider." *Id.*

[7] Available at:  https://oig.justice.gov/reports/2015/e1505.pdf (visited Feb. 21, 2019).

without the restrictions or administrative requirements of any correctional environment."). Compassionate release of Dr. Evans would relieve him of these difficulties.[8]

There is another reason why release and treatment at MD Anderson will provide Dr. Evans with treatment "in the most effective manner" – namely, it will give Dr. Evans ongoing support from family and friends that will enhance his recovery. *See* R. Morgan Griffin, "Cancer Support: Tips for Family and Friends," available at: https://www.webmd.com/cancer/features/cancer-support-tips-for-family-and-friends (visited Feb. 24, 2019). As the cited webpage states:

> Medical expertise is a key part of your cancer treatment. But it won't be enough. To get through this, you'll also need to build a cancer support team at home with your family and friends.
>
> Having good cancer support at home is crucial. "A cancer diagnosis adds an enormous amount of stress to a person's life," says Harold J. Burstein, MD, a staff oncologist at the Dana-Farber Cancer Institute in Boston. "But people who have strong social support[] – good friends and family – tend to cope much better."

*Id.* As evidenced by the attached letters (Appendix 5), Dr. Evans has the loving support of family and friends in the Houston area and elsewhere in Texas, and they will be in a much better position to help him through his ordeal if he is not behind prison walls.

The remaining § 3553(a) factors likewise support a reduction of Dr. Evans's sentence or are neutral. His "history and characteristics" include the fact that he is 74 years old (soon to be 75 years old), and, due to his incarceration, is likely biologically much older than his chronological

---

[8] To release Dr. Evans so as to enable him to seek treatment at MD Anderson, with his own resources, will also save the BOP a considerable amount of money. Prisoners over the age of 50 "already cost three times as much to incarcerate [as younger prisoners,] due to increased health care costs." Ferri, *supra* note 2, 43 Stetson L. Rev. at 197. And even the Department of Justice's Inspector General has recommended that an increased use of CR could help contain the BOP's burgeoning medical costs. *See The Impact of an Aging Inmate Population on the Federal Bureau of Prisons*, *supra*, at 46-50.

age.[9] He suffers from numerous other illnesses (*e.g.,* hyperlidemia, transient cerebral ischemia, and enlarged prostate) in addition to malignant melanoma.

A reduction of Dr. Evans's sentence to time served, or to a term of probation, would not disserve the factors set out in 18 U.S.C. § 3553(a)(2)(A) (the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" of conviction), 18 U.S.C. § 3553(a)(2)(B) (the need for the sentence imposed "to afford adequate deterrence to criminal conduct"), and 18 U.S.C. § 3553(a)(2)(C) (the need for the sentence imposed "to protect the public from further crimes of the defendant"). Dr. Evans has served nearly two years of his five-year prison sentence. And as Dr. Evans gets older, each year is harder and more costly. The Court no doubt considered age and health in sentencing Evans's co-defendant (the pharmacist who cooperated with the prosecution) to probation. Even ***without*** compassionate release, Dr. Evans will, by virtue of his age alone, be eligible for release to home confinement in 17 months, on or about August 11, 2020.[10] The requested reduction will not minimize the seriousness of the offenses and will provide just punishment for those offenses, as well as adequate general deterrence.

Furthermore, even a reduced sentence provides adequate protection of the public from further crimes by Dr. Evans. Dr. Evans retired from the practice of medicine in 2015, and his

---

[9] "In terms of physical aging, every year an elderly person spends in prison is equivalent to eleven-and-a-half years." Hinton, *supra* note 5, 41 J. Marshall L. Rev., at 234 n.68.

[10] The First Step Act of 2018, in addition to reforming CR, also reauthorized the Elderly Home Detention Pilot Program, providing that inmates 60 years of age or older would, upon completion of 2/3 of their sentences, be eligible to serve the remainder of their sentences on home confinement. *See* First Step Act of 2018, Pub. L. 115-391, § 603(a), 132 Stat. 5194, 5238 (Dec. 21, 2019) (amending 34 U.S.C. § 60541(g)). Even assuming that the 2/3 requirement applies to the pronounced sentence, without taking into account "good time," *see, e.g., Izzo v. Wiley*, 620 F.3d 1257, 1260-61 (10th Cir. 2010) (adopting this interpretation), 2/3 of Dr. Evans's 60-month prison sentence would be 40 months, which would be completed on or about August 11, 2020.

license to practice medicine expired on February 28, 2016. *See* PSR ¶¶ 98-99. He has no history of violence. And, even with the requested reduction of sentence, Dr. Evans will still be on supervision – either supervised release or probation/home confinement – for several years.

Finally – since § 3553(a)(4) and (5) mandates consideration of the Sentencing Guidelines and the Sentencing Commission's policy statements – the Sentencing Commission advises that age and illness may be reasons for departing or varying below the range recommended by the Guidelines. *See* USSG § 5H1.1 (p.s.); USSG § 5H1.4 (p.s.).

Although judicial decisions addressing compassionate release are few and far between (due most likely to the small number of CR motions made by the BOP over the years), a 2016 case from the District of Massachusetts supports, by way of analogy, relief in Dr. Evans's case. *See United States v. DiMasi*, 220 F. Supp. 3d 173 (D. Mass. 2016). In *DiMasi*, the defendant was sentenced to "eight years in prison for extortion and related crimes committed while he was the Speaker of the Massachusetts House of Representatives." *Id.* at 174. When he had served about five years of that sentence, the BOP moved, pursuant to 18 U.S.C. § 3582(c)(1)(A), to reduce DiMasi's sentence to time served. *See id.* The "extraordinary and compelling reasons" cited by the BOP were that, as the consequence of radiation treatments received for tongue and neck cancer, DiMasi suffered from untreatable esophageal narrowing that significantly inhibited his ability to swallow and put him at risk of choking and of pneumonia from aspirated food particles. *See id.* at 175-77.

The district court agreed that CR was appropriate. It noted that the cancers suffered by DiMasi while in custody were part of his "history and characteristics" weighing in favor of reducing his sentence. *See id.* at 176-77. It noted that DiMasi's esophageal narrowing, while not a terminal illness and while not impairing DiMasi's functioning (except for the ability to swallow), was a "serious medical condition" because it was medically indicated that DiMasi be monitored

12

while eating, which monitoring could be more effectively performed by family or hired professionals than by an inmate companion. *See id.*

The court also determined that "DiMasi's release w[ould] also serve the interest of providing him with the *most effective medical treatment* in another way." *Id.* at 177. While prison inmates "do not have a right to optimal medical care or to the doctors of their choice," *id.*, releasing DiMasi would give him "the liberty of selecting the doctors and hospitals he wants to treat him, and will have the opportunity to obtain what may be better medical care than he would if he remained in custody." *Id.*

Finally, the court determined that, although DiMasi's crimes were serious, the purposes of sentencing would be adequately served by time served (corresponding to five years, on the original eight-year sentence). *See id.* The court granted release, with a six-month period of home confinement. *See id.* at 178-79. *DiMasi* shows that such medical conditions may justify CR, especially where it will enable the defendant to receive medical care in the most effective manner possible.

**V.     Conclusion.**

Dr. Evans is suffering from a life-threatening malignant melanoma, and prompt intervention is required in order to save his life. Regardless of what the BOP can, or will, do to help him, the "most effective manner" of treating Dr. Evans's cancer is to seek treatment at MD Anderson Cancer Center; and MD Anderson is prepared to take Dr. Evans on as a patient immediately. The First Step Act has given this Court the ability to make that happen, by empowering the Court to reduce his sentence to time served, or alternatively, to a term of probation with or without home confinement.

Respectfully submitted,

/s/ David Gerger
David Gerger
Texas Bar No. 07816360
dgerger@gkhfirm.com
Samy Khalil
Texas Bar No. 24038997
skhalil@gkhfirm.com
Ashlee McFarlane
Texas Bar No. 24070243
amcfarlane@gkhfirm.com
GERGER, KHALIL & HENNESSY LLP
1001 Fannin, Suite 2450
Houston, Texas 77002
713.224.4400 – Telephone
713.224.5153 – Fax

**ATTORNEYS FOR DEFENDANT
RICHARD ARTHUR EVANS**

## CERTIFICATE OF CONFERENCE

I certify that on February 27, 2019, I conferred with AUSA Quincy Ollison, who advised that the government will review our filed motion and respond. We respectfully request expedited consideration.

/s/ David Gerger
David Gerger

## CERTIFICATE OF SERVICE

I certify that on March 8, 2019, I electronically filed this motion with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record. On the same day, I also emailed a copy of this motion to Warden R. Myers, FCI Oakdale II, Oakdale, Louisiana, at OAD/ExecAssistant@bop.gov; Shane Robinson, executive assistant to Warden Myers, at csrobinson@bop.gov; and Eric Hammonds, BOP counsel at FDC-Houston, at ehammonds@bop.gov.

/s/ Samy Khalil
Samy Khalil